

FILED IN OPEN COURT
U.S.D.C. - Atlanta

APR 1 9 2023

KEVIN P. WEIMER, Clerk
By:
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

MILAN PATEL

Criminal Indictment

1 : 2 3 C R 1 2 6 .

THE GRAND JURY CHARGES THAT:

## Count One
### (18 U.S.C. § 371 -- Conspiracy to Commit Securities Fraud)

1.  Beginning no later than in or about October 2017 and continuing until in or about January 2020, the exact dates being unknown, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, Bart Ross, Mark Melnick, Charles Parrino, Anthony Salandra, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other to commit an offense against the United States, namely, securities fraud, that is, to willfully and knowingly, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

<u>Background</u>

At all times relevant to this Indictment:

2.   The United States Securities and Exchange Commission ("SEC") was an independent agency of the United States charged with enforcing the federal securities laws, which are designed to provide the investing public with full disclosure of all material facts regarding matters involving the offer, purchase, and sale of securities, among other things. These laws protect the investing public in the purchase of stock that is publicly distributed by maintaining fair and honest securities markets and eliminating manipulative practices that tend to distort the fair and just price of stock. The SEC regulated, among other things, the offers and sales of securities. For a company to offer or sell its securities to the public, federal securities laws, specifically Section 5 of the Securities Act of 1933, required that the company first file a registration statement with the SEC or that the transaction be exempt from registration. The requirement of a registration statement was designed, in part, to protect the general investing public by requiring detailed disclosures about a company's actual operations and financial condition.

3. The Financial Industry Regulatory Authority, Inc. ("FINRA") was an industry organization representing persons and companies involved in the securities industry in the United States. It was a self-regulatory organization responsible for the regulation of its industry, with oversight from the SEC. FINRA licensed individuals and admitted firms to the industry, wrote rules to govern their behavior, examined them for regulatory compliance, and was sanctioned by the SEC to discipline registered representatives and member firms that failed to comply with the federal securities laws and FINRA's rules and regulations.

4. Trillian was a proprietary multiprotocol instant messaging application created by Cerulean Studios, LLC. Trillian allowed users to connect with multiple instant messaging services, including Google Talk, Facebook Messenger, AOL Instant Messenger, and Yahoo! Messenger. The advantage of using Trillian is that a user does not need to be logged into separate applications to chat across multiple platforms.

5. A call option for stocks was, in substance, a contract that gave the option's owner the right, but not the obligation, to buy shares of the underlying stock at a set price per share, known as the option's strike price, on or before a set future date, known as the option's expiration date. Generally, the holder of a call option benefited when the price of the underlying stock increases. Short-term call options generally expire within a week.

6. Trade The News, TradeXchange, Benzinga, RANsquawk, and T3 Live, LLC are examples of "market subscription services." These subscription services disseminated market-related rumors and news.

7. Defendant **MILAN PATEL** was a day trader who resided in the Northern District of Georgia. Defendant **PATEL** had a Trillian account. The conspirators referred to defendant **PATEL** as "the Pope."

8. Bart Ross resided in the Northern District of Georgia. Ross was previously registered with FINRA as a registered broker and employed at T3 Trading Group, LLC. Ross had a Trillian account.

9. Mark Melnick resided in New Jersey and was a T3 Live Senior Trading Strategist and T3 Live contributor. Melnick has been a professional day trader since approximately 1999. Melnick operated a video feed on the T3 Live platform through which Melnick provided real-time stock and options trade ideas to his subscribers during trading hours in a live, interactive trading room. Melnick had a Trillian account.

10. Charles Parrino resided in New Jersey and Florida and was registered with FINRA as a registered broker. Parrino was employed by T3 Trading from approximately January 2011 until July 2019. Parrino had a Trillian account.

11. Anthony Salandra resided in Florida and was registered with FINRA as a registered broker. Salandra was employed by Chimera Securities, an SEC-registered broker-dealer, from approximately August 2014 until August 2019. Salandra had been previously employed by T3 Trading, another SEC-registered broker-dealer. Salandra had a Trillian account.

<u>The Fraudulent Rumor Trading Scheme</u>

12. Beginning no later than in or about October 2017 and continuing until in or about January 2020, the defendant, **MILAN PATEL**, Ross, Melnick, Parrino, Salandra, and others known and unknown to the Grand Jury executed a scheme in which they traded securities, primarily short-term call options, in publicly traded companies (*e.g.*, Disney, Kellogg, and Yelp) based on materially false rumors about those companies that the conspirators had generated and disseminated. These materially false rumors were intended to drive up the price of the securities (both the underlying stock and options).

13. During the relevant period, defendant **PATEL** executed at least 100 trades consistent with the alleged securities fraud scheme, including executing the trades alleged in this Indictment. In total, defendant **PATEL** earned at least $1 million in profits from executing trades based on materially false rumors that were generated and disseminated by the conspirators.

<u>Manner and Means of Trading Scheme</u>

14. Parrino, Salandra, Ross and the other conspirators drafted and generated a variety of false rumors about the publicly traded companies, such as fake rumors that a company was involved in an acquisition or spinoff, or that a prominent investor intended to make a sizeable investment in a company. The materially false rumors would sometimes have to be revised and reformulated in response to input from defendant **PATEL**.

15. The conspirators communicated in a variety of ways, including using Trillian, Skype, telephone calls, and email. With respect to drafting and finalizing

5

the materially false rumors, the conspirators communicated by exchanging electronic messages on Trillian.

16. Defendant **PATEL** and Melnick would often discuss via Trillian chat exchanges, over Skype, and during telephone conversations, whether a particular false rumor would be successful. Melnick provided defendant **PATEL** with a "technical evaluation" regarding the particular stock under discussion.

17. Once the rumor was formulated, defendant **PATEL** was responsible for disseminating the rumor via Trillian to multiple accounts, which in turn would result in the materially false rumor being disseminated via one or more subscription services, including Trade The News, TradeXchange, and Benzinga, and via Twitter accounts. Defendant **PATEL** made the ultimate determination whether one of the materially false rumors developed by the conspirators would be disseminated.

18. Before defendant **PATEL** disseminated the rumor, defendant **PATEL** and the other conspirators would typically acquire a position in the publicly traded company that was the subject of the materially false rumor. The conspirators typically purchased short-term call options before (sometimes just minutes or seconds before) defendant **PATEL** disseminated the rumor. The conspirators often (but not always) purchased short-term call options because the price of such options is more sensitive than the price of the underlying stock. Accordingly, it was possible for the conspirators to make greater percentage returns by trading short-term call options rather than the underlying stock.

19. The conspirators profited from their scheme by selling the options (or other securities) after they increased in price. Defendant **PATEL** and the other conspirators typically began selling off their positions shortly after the rumor was disseminated (after the price of the option or underlying stock had increased).

20. After trading on the fraudulent rumors, the conspirators would sometimes exchange Trillian messages discussing whether a given fraudulent rumor worked, that is, whether the conspirators traded profitably on the rumor.

21. Melnick had an agreement with defendant **PATEL** under which he would share a portion of his profits with defendant **PATEL** from the above-described securities fraud scheme.

<u>Examples of Trades on Materially Fraudulent Rumors</u>

*January 2018 International Paper trade*

22. International Paper was one of the world's leading producers of fiber-based packaging, pulp, and paper, headquartered in Memphis, Tennessee. International Paper was publicly traded under the ticker symbol "IP" on the New York Stock Exchange. International Paper's securities were registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934.

23. On or about January 18, 2018, at approximately 10:02 a.m., Parrino sent defendant **PATEL** a Trillian chat message with the following materially false rumor: "IP Hearing privately held Koch Industries Inc. is nearing a deal to buy International Paper Co. (IP) for close to $72.50 per share. unconfirmed."

24. On or about January 18, 2018, at approximately 11:21 a.m., defendant **PATEL** sent two Trillian chat messages to Parrino stating "bought ip" and "ip long." Parrino responded "k[.]"

25. On or about January 18, 2018, between approximately 11:19:58 a.m. and 11:20:31 a.m., defendant **PATEL** purchased short-term call options in International Paper.

26. On or about January 18, 2018, at approximately 11:21:15 a.m., seconds after sending the above messages to Parrino, defendant **PATEL** sent out the materially false rumor about IP to multiple Trillian accounts stating," IP Hearing privately held Koch Industries Inc. is nearing a deal to buy International Paper Co. for close to $72.50 per share. unconfirmed."

27. On or about January 18, 2018, between approximately 11:23:10 a.m. and 11:46:23 a.m., defendant **PATEL** profitably sold off his position in International Paper.

28. The next morning, on or about January 19, 2018, Parrino sent defendant **PATEL** the following Trillian message: "fyi I traded ZERO options in IP yest. Retarded. Flipped some stock and watched it go higher."

***February 2018 Pacific Gas & Electric Company trade***

29. Pacific Gas & Electric Company ("PG&E") was one of the largest combined natural gas and electric energy companies in the United States. PG&E was a leading subsidiary of PG&E Corporation, which publicly traded under the ticker symbol "PCG" on the New York Stock Exchange. PG&E Corporation's securities

were registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934.

30. On or about February 1, 2018, at approximately 10:06:59 a.m., Salandra sent the following message via Trillian to Ross and Parrino: "PCG whats up[?]" Ross responds to Salandra and Parrino: "working on it."

31. On or about February 1, 2018, at approximately 10:11:06 a.m., defendant **PATEL** sent Parrino a message on Trillian that read: "needa homer." Parrino responds "yup. Roku ea damn[.]"

32. On or about February 1, 2018, at approximately 10:25:02, Parrino sent a draft of the materially false rumor about PG&E to Ross and Salandra via Trillian that read: "A spokeswoman for the California Department of Forestry and Fire Protection is stating that after thorough investigation it has determined that the fires that decimated a Santa Rosa neighborhood and killed 21 people was caused by electrical equipment owned, installed, and maintained by a third party exonerating Pacific Gas and electric Co. (PCG) from all liability."

33. On or about February 1, 2018, at approximately 10:30:44 a.m., Ross sent Salandra and Parrino a Trillian message that he "will let you know when I buy."

34. On or about February 1, 2018, at approximately 11:37:14 a.m., Ross sent Salandra and Parrino a Trillian message that he "bought PCG." Parrino replied to Ross and Salandra via Trillian, "gimme 5 mins." Parrino then sent a Trillian message to defendant **PATEL** at approximately 11:37:40 a.m. stating, "pik up."

35. On or about February 1, 2018, at approximately 11:40:57 a.m., Parrino sent defendant **PATEL** a Trillian message with the following materially false rumor

9

about PG&E: "A spokeswoman for the California Department of Forestry and Fire Protection is stating that after thorough investigation it has determined that the fires that decimated a Santa Rosa neighborhood and killed 21 people was caused by electrical equipment owned, installed, and maintained by a third party exonerating Pacific Gas and electric Co. (PCG) from all liability." At approximately 11:45:44 a.m., Parrino sent the same materially false rumor to Ross and Salandra via Trillian.

36. On or about February 1, 2018, between approximately 11:41:16 a.m. and 11:41:59 a.m., defendant **PATEL** purchased PCG short call options. Between approximately 11:36:16 a.m. and 11:49:04 a.m., Ross, Parrino, and Salandra also purchased PCG securities.

37. On or about February 1, 2018, between approximately 11:48:37 a.m. and 11:48:59 a.m., defendant **PATEL** sent out the materially false rumor about PG&E to multiple Trillian accounts reading: "PCG :Hearing chatter the California Department of Forestry and Fire Protection is stating that after a thorough investigation it has determined that the fires that decimated a Santa Rosa neighborhood and killed 21 people was caused by electrical equipment owned, installed, and maintained by a third party exonerating Pacific Gas and electric Co. (PCG) from all liability. unconfirmed."

38. On or about February 1, 2018, between approximately 11:49:36 a.m. and 11:49:54 a.m., defendant **PATEL** profitably sold off his position in PG&E Corporation.

39. On or about February 1, 2018, at approximately 11:49:26 a.m., defendant **PATEL** sent Parrino a Trillian message that stated: "that was I." At approximately 11:52:16 a.m., defendant **PATEL** received from a Trillian account with the username "swat.options," the following message: "BOOOOM." Defendant **PATEL** responded: "god dman [sic]. Lol."

40. On or about February 1, 2018, between approximately 11:52:26 a.m. and 11:52:34 a.m., defendant **PATEL** received the following messages from a Trillian account with the username "saulrosenberg": "that's a great one. there's the homer you've been waiting on."

41. On or about February 1, 2018, at approximately 11:53 a.m., trading was temporary halted in PG&E Corporation.

42. On or about February 1, 2018, between approximately 11:49:40 a.m. and 12:00:54 p.m., Ross, Parrino, and Salandra also profitably sold off their positions in PG&E Corporation.

**March 2018 Disney trade**

43. The Walt Disney Company ("Disney") was one of the largest mass media and entertainment conglomerates in the world. Disney publicly traded under the ticker symbol "DIS" on the New York Stock Exchange. Disney's securities were registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934.

44. On or about March 7, 2018, between approximately 11:30 a.m. and 11:40 a.m., Ross sent Parrino a Trillian chat message with two similarly phrased Disney-related materially false rumors: (1) "Walt Disney Co. has hired Goldman

sachs [sic] to spin off ESPN and their theme parks. The deal will enchane [sic] shareholder value, and according to one analyst could leave [sic] to an eventual sale of the company. Price tags could fetch over $175 per share according to analysts"; and (2) "Walt Disney Co. (DIS) has reportedly hired Goldman Sachs in an effort to spin off their ESPN unit and their theme parks. According to one analyst the break-up could exceed $175 per share, and an eventual sale of the company." This rumor relating to Disney, namely, that Disney purportedly hired Goldman Sachs to help spin off several assets, including ESPN and its theme parks, was materially false.

45. On or about March 7, 2018, at approximately 11:54 a.m., Ross sent Parrino a Trillian message advising him that he spoke with defendant **PATEL** by phone and gave defendant **PATEL** the Disney-related rumor. Parrino then asked to speak with Ross by telephone.

46. On or about March 8, 2018, at approximately 7:48 a.m., Ross sent Parrino the following Trillian message: "send me disney story." In response, Parrino sent Ross a third, slightly different version of the Disney-related rumor, which read: "According to sources, Walt Disney Co. (DIS) has reportedly hired Goldman Sachs to spin off their theme parks and ESPN. According to one analyst the break-up value could exceed $175 per share and may lead to an eventual sale of the company, unconfirmed." Ross replied to Parrino, "doesn't read great," to which Parrino responded, "back to the drawing board."

47. On or about March 8, 2018, between approximately 8:10 a.m. and 9:52 a.m., Ross and Parrino exchanged multiple messages via Trillian in which they revised the false Disney rumor.

48. On or about March 8, 2018, during the time when Ross and Parrino were exchanging messages, defendant **PATEL** sent Ross a Trillian message requesting that Ross call defendant **PATEL**.

49. On or about March 8, 2018, at approximately 9:53:14 a.m., Ross sent defendant **PATEL** a Trillian message with the Disney-related rumor, which read, "Walt Disney Co. (DIS) has reportedl [sic] Sachs to spin off their theme parks and ESPN. According to one analyst the break-up value could exceed $155 per share and may lead to an eventual sale of the company."

50. Between on or about March 6, 2018 and on or about March 7, 2018, Ross purchased short-term call options in Disney.

51. On or about March 7, 2018, defendant **PATEL** purchased short-term call options in Disney.

52. On or about March 7, 2018, Salandra and Parrino purchased short-term call options and stock in Disney.

53. On or about March 8, 2018, at approximately 9:57 a.m., defendant **PATEL** purchased additional short-term call options in Disney.

54. On or about March 8, 2018, between approximately 9:51:05 a.m. and 9:57:40 a.m., Melnick, Salandra, and Parrino purchased short-term call options and other securities in Disney.

55. On or about March 8, 2018, at approximately 9:57:32 a.m., defendant **PATEL** sent out the materially false rumor about Disney to multiple Trillian accounts, including Salandra. Defendant **PATEL** sent out the rumor stating, "DIS Chatter hearing hired GS to spin off their theme parks and ESPN. According to one analyst the break-up fee value could exceed $155 per share and may lead to an eventual sale of the company, unconfirmed."

56. On or about March 8, 2018, at approximately 9:58:50 a.m., Benzinga Chat (BenzingaCharlie) posted "DIS spinoff chatter."

57. On or about March 8, 2018, at approximately 10:04:21 a.m., RANsquawk posted "RANsquawk sources note Disney (DIS) may be selling off ESPN and Theme Park assets 'unconfirmed.'"

58. On or about March 8, 2018, between approximately 9:58:30 a.m. and 10:29:01 a.m., defendant **PATEL** profitably sold off his position in Disney.

59. On or about March 8, 2018, Melnick, Parrino, Ross, and Salandra profitably sold off their positions in Disney beginning at approximately 9:58:42 a.m. and continuing until approximately 3:19 p.m.

*April 2018 Ben Franklin trade*

60. Franklin Resources Inc. ("Ben Franklin") was a global investment firm referred to as Franklin Templeton. Ben Franklin was publicly traded under the ticker symbol "BEN" on the New York Stock Exchange. Ben Franklin's securities were registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934.

61. On or about April 17, 2018, Ross and Parrino exchanged multiple Trillian chat messages about a materially false rumor involving Ben Franklin. Ross and Parrino exchanged slightly different formulations (or drafts) of the rumor that BlackRock, Inc., a global investment firm based in New York, may make an offer to acquire Ben Franklin.

62. On or about April 18, 2018, at approximately 9:27:43 a.m., Ross sent Parrino via Trillian the following version of the materially false rumor about Ben Franklin: "BlackRock (BLK) has offered to acquire Franklin Resources (BEN) ina [sic] cash transaction valuing the fund at $55 per share." Parrino replied via Trillian to Ross, acknowledging that he received the rumor.

63. On or about April 18, 2018, at approximately 10:15 a.m., Parrino sent the materially false Ben Franklin rumor back to Ross via Trillian.

64. On or about April 18, 2018, at approximately 10:23:28 a.m., Salandra sent the materially false rumor about Ben Franklin via Trillian to defendant **PATEL**.

65. On or about April 18, 2018, between approximately 10:05:56 a.m. and 10:08:35 a.m., Ross purchased short-term call options in Ben Franklin.

66. On or about April 18, 2018, between approximately 10:25:34 a.m. and 10:25:35 a.m., defendant **PATEL** purchased short-term call options in Ben Franklin.

67. On or about April 18, 2018, at approximately 10:26:10 a.m., Melnick purchased short-term call options in Ben Franklin.

68. On or about April 18, 2018, between approximately 10:09:23 a.m. and 10:25:59 a.m., Salandra purchased short-term call options and stock in Ben Franklin.

69. On or about April 18, 2018, between approximately 10:09:23 a.m. and 10:26:23 a.m., Parrino purchased short-term call options and stock in Ben Franklin.

70. On or about April 18, 2018, at approximately 10:26:13 a.m., defendant **PATEL** sent out the materially false rumor about Ben Franklin to multiple Trillian accounts. Defendant **PATEL** sent out the rumor stating, "BlackRock (BLK) has offered to acquire Franklin Resources (BEN) in a cash transaction valuing the fund at $55 per share (unconfirmed)."

71. On or about April 18, 2018, at approximately 10:27:30 a.m., Benzinga Chat (BenzingaCharlie) posted "BLK BEN chatter," and at approximately 10:29:12 a.m., RANsquawk posted, "Takeover talks for Franklin Resources (BEN); Blackrock touted as a potential suitor for USD 55/shr; unconfirmed."

72. On or about April 18, 2018, between approximately 10:26:53 a.m. and 10:43:09 a.m., defendant **PATEL** profitably sold his position in Ben Franklin.

73. On or about April 18, 2018, beginning at approximately 10:26:42 a.m. and continuing until about 2:18:36 p.m., Melnick, Parrino, Ross, and Salandra profitably sold their positions in Ben Franklin.

*June 2019 BlackBerry Trade*

74. BlackBerry Limited ("BlackBerry") was a Canadian software company specializing in cybersecurity. BlackBerry was publicly traded under the ticker

symbol "BB" on the New York Stock Exchange. BlackBerry's securities were registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934.

75. On or about June 10, 2019, defendant **PATEL** had the following exchange via Trillian with username "joecttrde3":

    a. At approximately 12:51:01 p.m., joecttrade3 sent: "That CrowdStrike IPO now valued to come at approx $6B, vs the $1.5B BB paid for Cylance.  CrowdStrike does a little more revs than Cylance, but still, both originated from Mcafee. was my email ^[.]"

    b. Defendant **PATEL** responded a few seconds later: "god damn. both form [sic] mcaffe[.]"

    c. joecttrade3 responded: "correct"

    d. Defendant **PATEL** responded: "keep it low key. [I] think u onto something big."

76. On or about June 10, 2019, defendant **PATEL** purchased shares and options in BlackBerry.

77. On or about June 11, 2019, between approximately 9:24:41 a.m. and 10:02:07 a.m., defendant **PATEL** purchased additional short-term call options. In addition, between approximately 9:03:30 a.m. and 10:05:54 a.m., Melnick, Parrino, and Salandra also acquired positions in BlackBerry.

78. On or about June 11, 2019, at approximately 9:59:07 a.m., defendant **PATEL** received a Trillian message from Parrino with the following materially false rumor about BlackBerry: "BB Various news outlets are hearing strong

reports that Elliott Management Corp. has accumulated a major stake in BlackBerry Limited (BB).  Sources also hear several other private equity firms have expressed an interest in the buyout of the entire cybersecurity company for $14 to $15 per share. unconfirmed."

79. On or about June 11, 2019, at approximately 10:02:51 a.m., defendant **PATEL** sent this materially false rumor about BlackBerry via Trillian to multiple accounts.

80. Beginning on or about June 11, 2019, at approximately 10:16:39 a.m., and continuing until on or about June 12, 2019, defendant **PATEL** profitably closed his position in BlackBerry. Similarly, beginning on or about June 11, 2019, at approximately 10:16:03 a.m., and continuing until on or about June 12, 2019, Melnick, Parrino, and Salandra likewise closed their positions in BlackBerry.

*August 2019 Kellogg Trade*

81. The Kellogg Company ("Kellogg") was an American multinational food manufacturer headquartered in Battle Creek, Michigan. Kellogg was publicly traded under the ticker symbol "K" on the New York Stock Exchange. Kellogg's securities were registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934.

82. On or about August 15, 2019, between approximately 9:55:31 a.m. and 9:56:17 a.m., defendant **PATEL** purchased short-term call options in Kellogg. Between approximately 9:47:58 a.m. and 9:57:35 a.m., Melnick and Parrino also purchased short-term call options in Kellogg.

83. On or about August 15, 2019, at approximately 9:56:59 a.m., defendant **PATEL** received a Trillian message from Parrino with the following materially false rumor about Kellogg: "Kellogg (K) Hearing Pershing Square will soon unveil a very large stake in Kellogg Company (K). Sources hear activist Bill Ackman is demanding an immediate spin-off of MorningStar Farms to unlock shareholder value." Almost immediately after receiving this rumor, at approximately 9:57:15 a.m., defendant **PATEL** sent this materially false rumor via Trillian to multiple accounts.

84. On or about August 15, 2019, between approximately 9:58:14 a.m. and 10:05:31 a.m., defendant **PATEL** profitably closed his position in Kellogg. Melnick and Parrino closed their positions in Kellogg between approximately 9:58:14 a.m. and 12:42:38 p.m.

85. On or about August 15, 2019, after sending out the materially false rumor about Kellogg, defendant **PATEL** received and sent various messages about Kellogg:

      a. At approximately 9:58:24 a.m., defendant **PATEL** received the following message from Trillian username "joecttrade3": "nice one." At approximately 10:00:23 a.m., defendant **PATEL** responded to "joecttrade3": "bang[.]" At approximately 10:00:28 a.m., "joecttrade3" responded: "sick." Defendant **PATEL** had earlier sent the materially false rumor about Kellogg to joecttrade3.

      b. At approximately 10:00:24 a.m., defendant **PATEL** received the following message from Trillian username "darrnbsh": "n1."

Defendant **PATEL** had earlier sent the materially false rumor about Kellogg to darrnbsh.

c.  At approximately 10:22:58 a.m. and 10:44:45 a.m., defendant **PATEL** received, respectively, the following messages from Parrino: "last hurrah K" and "K pop."

***August 2019 Yelp Trade***

86. Yelp Inc. ("Yelp") operated Yelp.com, which was a crowd-sourced local business review and social networking site that allowed its users to submit unsolicited reviews of products or services using a one- to five-star rating scale. Yelp was publicly traded under the ticker symbol "YELP" on the New York Stock Exchange. Yelp's securities were registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934.

87. On or about August 27, 2019, beginning at approximately 9:57:46 a.m. and continuing until approximately 10:06:26 a.m., defendant **PATEL**, Melnick, and Parrino began to purchase short-call options and securities in Yelp.

88. On or about August 27, 2019, at approximately 10:06:01 a.m., defendant **PATEL** received a Trillian message from Parrino with the following materially false rumor about Yelp: "Sources circulating a Form 13D will soon be filed by a major activist. Hearing a sizeable stake in Yelp, Inc. (YELP) has been made. Sources are hearing the activist will seek an immediate sale of the company." Almost immediately after receiving this rumor, at approximately 10:06:36 a.m., defendant **PATEL** sent this materially false rumor via Trillian to various accounts.

89. Defendant **PATEL**, Melnick, and Parrino began closing their positions in Yelp shortly after the materially false rumor was disseminated, with each of them beginning to close their positions no later than 10:07:39 a.m. Defendant **PATEL** profitably closed his entire position at approximately 10:24 a.m.; Melnick profitably closed his position at approximately 10:13 a.m.; and Parrino profitably closed his position at approximately 11:33 a.m.

Overt Acts

90. In furtherance of the conspiracy and to accomplish its objects and purpose, the defendant, **MILAN PATEL**, and his co-conspirators, committed and caused to be committed, in the Northern District of Georgia and elsewhere, the following overt acts, among others:

a. On or about October 8, 2017, defendant **PATEL** emailed Parrino: "Anyway get trillian pro dint [sic] wait like all morons."

b. In or about January 2018, defendant **PATEL** and Melnick engaged in a conversation over Skype in which they discussed whether trading on a materially false rumor relating to International Paper would be successful. Specifically, defendant **PATEL** asked Melnick for "technical analysis" about IP in assessing whether trading on a materially false rumor would "work."

c. On or about January 18, 2018, between approximately 11:19:58 a.m. and 11:20:31 a.m., defendant **PATEL** purchased short-term call options in International Paper.

d. On or about January 18, 2018, at approximately 11:21:15 a.m., defendant **PATEL** sent a materially false rumor about IP to multiple Trillian accounts stating, " IP[.] Hearing privately held Koch Industries Inc. is nearing a deal to buy International Paper Co. for close to $72.50 per share. unconfirmed."

e. On or about January 18, 2018, between approximately 11:23:10 a.m. and 11:46:23 a.m., defendant **PATEL** sold off his position in International Paper.

f. On or about February 1, 2018, at approximately 10:08:25 a.m., defendant **PATEL** sent Parrino a message on Trillian that read: "needa homer." Parrino responded, "yup. Roku ea damn[.]"

g. On or about February 1, 2018, between approximately 11:41:16 a.m. and 11:41:59 a.m., defendant **PATEL** purchased PCG short-term call options.

h. On or about February 1, 2018, between approximately 11:48:37 a.m. and 11:48:59 a.m., defendant **PATEL** sent out a materially false rumor about PG&E to multiple Trillian accounts stating: "PCG :Hearing chatter the California Department of Forestry and Fire Protection is stating that after a thorough investigation it has determined that the fires that decimated a Santa Rosa neighborhood and killed 21 people was caused by electrical equipment owned, installed, and maintained by a third party exonerating Pacific Gas and electric Co. (PCG) from all liability. unconfirmed."

i.  On or about February 1, 2018, between approximately 11:49:36 a.m. and 11:49:54 a.m., defendant **PATEL** profitably sold off his position in PG&E Corporation.

j.  On or about March 7, 2018, at approximately 11:54 a.m., Ross sent Parrino a Trillian message advising him that he spoke with defendant **PATEL** by phone and gave defendant **PATEL** the Disney-related rumor. Parrino then asked to speak with Ross by telephone.

k. On or about March 8, 2018, during the time when Ross and Parrino were exchanging messages, defendant **PATEL** sent Ross a Trillian message requesting that Ross call defendant **PATEL**.

l.  On or about March 8, 2018, at approximately 9:53:14 a.m., Ross sent defendant **PATEL** a Trillian message with a Disney-related rumor, which read, "Walt Disney Co. (DIS) has reportedl [sic] Sachs to spin off their theme parks and ESPN. According to one analyst the break-up value could exceed $155 per share and may lead to an eventual sale of the company."

m.    On or about March 7, 2018, defendant **PATEL** purchased short-term call options in Disney.

n. On or about March 8, 2018, at approximately 9:57 a.m., defendant **PATEL** purchased short-term call options in Disney.

o. On or about March 8, 2018, at approximately 9:57:32 a.m., defendant **PATEL** sent out the materially false rumor about Disney to multiple Trillian accounts, including Salandra. Defendant **PATEL** sent out the rumor stating, "DIS Chatter hearing hired GS to spin off their theme parks

23

and ESPN. According to one analyst the break-up fee value could exceed $155 per share and may lead to an eventual sale of the company, unconfirmed."

p. On or about March 8, 2018, between approximately 9:58:30 a.m. and 10:29:01 a.m., defendant **PATEL** sold off his position in Disney.

q. On or about April 18, 2018, at approximately 10:23:28 a.m., Salandra sent a materially false rumor about Ben Franklin to defendant **PATEL**.

r. On or about April 18, 2018, between approximately 10:25:34 a.m. and 10:25:35 a.m., defendant **PATEL** purchased short-term call options in Ben Franklin.

s. On or about April 18, 2018, at approximately 10:26:13 a.m., defendant **PATEL** sent out the materially false rumor about Ben Franklin to multiple Trillian accounts. Defendant **PATEL** sent out the rumor stating, "BlackRock (BLK) has offered to acquire Franklin Resources (BEN) in a cash transaction valuing the fund at $55 per share (unconfirmed)."

t. On or about April 18, 2018, between approximately 10:26:53 a.m. and 10:43:09 a.m., defendant **PATEL** closed his position in Ben Franklin.

u. On or about June 10, 2019, defendant **PATEL** purchased shares and options in BlackBerry.

v. On or about June 11, 2019, between approximately 9:24:41 a.m. and 10:0:07 a.m., defendant **PATEL** purchased additional short-term call options in Blackberry.

w.On or about June 11, 2019, at approximately 9:59:07 a.m., defendant **PATEL** received a Trillian message from Parrino with the following materially false rumor about BlackBerry: "BB Various news outlets are hearing strong reports that Elliott Management Corp. has accumulated a major stake in BlackBerry Limited (BB).  Sources also hear several other private equity firms have expressed an interest in the buyout of the entire cybersecurity company for $14 to $15 per share. unconfirmed."

x. On or about June 11, 2019, at approximately 10:02:51 a.m., defendant **PATEL** sent this materially false rumor about BlackBerry via Trillian to multiple accounts.

y. Beginning on or about June 11, 2019, at approximately 10:16:39 a.m., and continuing until on or about June 12, 2019, defendant **PATEL** profitably closed his position in BlackBerry.

z. On or about August 15, 2019, between approximately 9:55:31 a.m. and 9:56:17 a.m., defendant **PATEL** purchased short-term call options in Kellogg.

aa.    On or about August 15, 2019, at approximately 9:56:59 a.m., defendant **PATEL** received a Trillian message from Parrino with the following materially false rumor about Kellogg: "Kellogg (K) Hearing Pershing Square will soon unveil a very large stake in Kellogg Company (K). Sources hear activist Bill Ackman is demanding an immediate spin-off of MorningStar Farms to unlock shareholder value." Almost immediately

after receiving this rumor, at approximately 9:57:15 a.m., defendant **PATEL** sent this materially false rumor via Trillian to multiple accounts.

bb.    On or about August 15, 2019, between approximately 9:58:14 a.m. and 10:05:31 a.m., defendant **PATEL** profitably closed his position in Kellogg.

cc.    On or about August 27, 2019, beginning at approximately 9:57:46 a.m. and continuing until approximately 10:06:26 a.m., defendant **PATEL** began to purchase short-call options and securities in Yelp.

dd.    On or about August 27, 2019, at approximately 10:06:01 a.m., defendant **PATEL** received a Trillian message from Parrino with the following materially false rumor about Yelp: "Sources circulating a Form 13D will soon be filed by a major activist. Hearing a sizeable stake in Yelp, Inc. (YELP) has been made. Sources are hearing the activist will seek an immediate sale of the company." Almost immediately after receiving this rumor, at approximately 10:06:36 a.m., defendant **PATEL** sent this materially false rumor via Trillian to various accounts.

All in violation of Title 18, United States Code, Section 371.

## Count Two
### (15 U.S.C. §§ 78j(b) & 78ff(a) – Market Manipulation/International Paper)

91. The factual allegations contained in Paragraphs 2 through 28 of this Indictment are re-alleged and incorporated as if fully set forth herein.

92. On or about January 18, 2018, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known

26

and unknown to the Grand Jury, did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities of International Paper, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities.

All in violation of Title 15, United States Code, Section 78j(b) and Section 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, Section 240.10b5-1, and Section 240.10b5-2, and Title 18, United States Code, Section 2.

### Count Three
### (15 U.S.C. §§ 78j(b) & 78ff(a) – Market Manipulation/PG&E)

93. The factual allegations contained in Paragraphs 2 through 21 and 29 through 42 of this Indictment are re-alleged and incorporated as if fully set forth herein.

94. On or about February 1, 2018, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities

of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities of Pacific Gas & Electric Company, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities.

All in violation of Title 15, United States Code, Section 78j(b) and Section 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, Section 240.10b5-1, and Section 240.10b5-2, and Title 18, United States Code, Section 2.

## Count Four
### (15 U.S.C. §§ 78j(b) & 78ff(a) – Market Manipulation/Disney)

95. The factual allegations contained in Paragraphs 2 through 21 and 43 through 59 of this Indictment are re-alleged and incorporated as if fully set forth herein.

96. From on or about March 7, 2018, to on or about March 8, 2018, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and

contrivances in connection with the purchase and sale of securities of Disney, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities.

All in violation of Title 15, United States Code, Section 78j(b) and Section 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, Section 240.10b5-1, and Section 240.10b5-2, and Title 18, United States Code, Section 2.

## Count Five
### (15 U.S.C. §§ 78j(b) & 78ff(a) – Market Manipulation/Ben Franklin)

97. The factual allegations contained in Paragraphs 2 through 21 and 60 through 73 of this Indictment are re-alleged and incorporated as if fully set forth herein.

98. On or about April 18, 2018, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities of Franklin Resources, Inc. (Ben Franklin), and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements

of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities.

All in violation of Title 15, United States Code, Section 78j(b) and Section 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, Section 240.10b5-1, and Section 240.10b5-2, and Title 18, United States Code, Section 2.

## Count Six
### (15 U.S.C. §§ 78j(b) & 78ff(a) – Market Manipulation/BlackBerry)

99. The factual allegations contained in Paragraphs 2 through 21 and 74 through 80 of this Indictment are re-alleged and incorporated as if fully set forth herein.

100.   From on or about June 10, 2019, to on or about June 11, 2019, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities of Blackberry, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were

made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities.

All in violation of Title 15, United States Code, Section 78j(b) and Section 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, Section 240.10b5-1, and Section 240.10b5-2, and Title 18, United States Code, Section 2.

### Count Seven
### (15 U.S.C. §§ 78j(b) & 78ff(a) – Market Manipulation/Kellogg)

101.   The factual allegations contained in Paragraphs 2 through 21 and 81 through 85 of this Indictment are re-alleged and incorporated as if fully set forth herein.

102.   On or about August 15, 2019, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities of Kellogg, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a

31

fraud and deceit upon others, in connection with the purchase and sale of said securities.

All in violation of Title 15, United States Code, Section 78j(b) and Section 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, Section 240.10b5-1, and Section 240.10b5-2, and Title 18, United States Code, Section 2.

## Count Eight
### (15 U.S.C. §§ 78j(b) & 78ff(a) – Market Manipulation/Yelp)

103.   The factual allegations contained in Paragraphs 2 through 21 and 86 through 89 of this Indictment are re-alleged and incorporated as if fully set forth herein.

104.   On or about August 27, 2019, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities of Yelp, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities.

All in violation of Title 15, United States Code, Section 78j(b) and Section 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, Section 240.10b5-1, and Section 240.10b5-2, and Title 18, United States Code, Section 2.

## Count Nine
### (18 U.S.C. § 1349 – Conspiracy to Commit Securities Fraud)

105.    The factual allegations contained in Paragraphs 2 through 89 of this Indictment are re-alleged and incorporated as if fully set forth herein.

106.    Beginning no later than in or about October 2017 and continuing until in or about January 2020, the exact dates being unknown, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, Bart Ross, Mark Melnick, Charles Parrino, Anthony Salandra, and others known and unknown to the Grand Jury did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other to commit the securities fraud scheme alleged in Paragraphs 2 through 89 of this Indictment, that is, to knowingly devise, intend to devise, and execute a scheme and artifice (a) to defraud any person in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of any issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

All in violation of Title 18, United States Code, Section 1349.

## Count Ten
### (18 U.S.C. § 1348 – Securities Fraud/International Paper)

107.    The factual allegations contained in Paragraphs 2 through 28 of this
Indictment are re-alleged and incorporated as if fully set forth herein.

108.    On or about January 18, 2018, in the Northern District of Georgia and
elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known
and unknown to the Grand Jury, did knowingly execute and attempt to execute
the scheme and artifice alleged above in Paragraphs 2 through 28: (a) to defraud
any person in connection with any security of International Paper, an issuer with
a class of securities registered under Section 12 of the Securities and Exchange
Act of 1934, and (b) to obtain, by means of materially false and fraudulent
pretenses, representations, and promises, any money and property in connection
with the purchase and sale of any security of International Paper, an issuer with
a class of securities registered under Section 12 of the Securities and Exchange
Act of 1934.

All in violation of Title 18, United States Code, Section 1348 and Section 2.

## Count Eleven
### (18 U.S.C. § 1348 – Securities Fraud /PG&E)

109.    The factual allegations contained in Paragraphs 2 through 21 and 29
through 42 of this Indictment are re-alleged and incorporated as if fully set forth
herein.

110.    On or about February 1, 2018, in the Northern District of Georgia and
elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known
and unknown to the Grand Jury, did knowingly execute and attempt to execute

the scheme and artifice alleged above in Paragraphs 2 through 21 and 29 through 42: (a) to defraud any person in connection with any security of PG&E, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934, and (b) to obtain, by means of false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of PG&E, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934.

All in violation of Title 18, United States Code, Section 1348 and Section 2.

### Count Twelve
### (18 U.S.C. § 1348 – Securities Fraud/Disney)

111.   The factual allegations contained in Paragraphs 2 through 21 and 43 through 59 of this Indictment are re-alleged and incorporated as if fully set forth herein.

112.   From on or about March 7, 2018, to on or about March 8, 2018, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly execute and attempt to execute the scheme and artifice alleged above in Paragraphs 2 through 21 and 43 through 59: (a) to defraud any person in connection with any security of Disney, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale

of any security of Disney, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934.

All in violation of Title 18, United States Code, Section 1348 and Section 2.

### Count Thirteen
### (18 U.S.C. § 1348 – Securities Fraud/Ben Franklin)

113.   The factual allegations contained in Paragraphs 2 through 21 and 60 through 73 of this Indictment are re-alleged and incorporated as if fully set forth herein.

114.   On or about April 18, 2018, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly execute and attempt to execute the scheme and artifice alleged above in Paragraphs 2 through 21 and 60 through 73: (a) to defraud any person in connection with any security of Ben Franklin, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of Ben Franklin, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934.

All in violation of Title 18, United States Code, Section 1348 and Section 2.

## Count Fourteen
### (18 U.S.C. § 1348 – Securities Fraud/BlackBerry)

115.    The factual allegations contained in Paragraphs 2 through 21 and 74 through 80 of this Indictment are re-alleged and incorporated as if fully set forth herein.

116.    From on or about June 10, 2019, to on or about June 11, 2019, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly execute and attempt to execute the scheme and artifice alleged above in Paragraphs 2 through 21 and 74 through 80: (a) to defraud any person in connection with any security of BlackBerry, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of BlackBerry, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934.

All in violation of Title 18, United States Code, Section 1348 and Section 2.

## Count Fifteen
### (18 U.S.C. § 1348 – Securities Fraud/Kellogg)

117.    The factual allegations contained in Paragraphs 2 through 21 and 81 through 85 of this Indictment are re-alleged and incorporated as if fully set forth herein.

118.    On or about August 15, 2019, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known

and unknown to the Grand Jury, did knowingly execute and attempt to execute the scheme and artifice alleged above in Paragraphs 2 through 21 and 81 through 85: (a) to defraud any person in connection with any security of Kellogg, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of Kellogg, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934.

All in violation of Title 18, United States Code, Section 1348 and Section 2.

## <u>Count Sixteen</u>
### (18 U.S.C. § 1348 – Securities Fraud/Yelp)

119.   The factual allegations contained in Paragraphs 2 through 21 and 86 through 89 of this Indictment are re-alleged and incorporated as if fully set forth herein.

120.   On or about August 27, 2019, in the Northern District of Georgia and elsewhere, the defendant, **MILAN PATEL**, aided and abetted by others known and unknown to the Grand Jury, did knowingly execute and attempt to execute the scheme and artifice alleged above in Paragraphs 2 through 21 and 86 through 89: (a) to defraud any person in connection with any security of Yelp, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in

connection with the purchase and sale of any security of Yelp, an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934.

All in violation of Title 18, United States Code, Section 1348 and Section 2.

### Forfeiture Provision

121.   Upon conviction of the offenses alleged in Counts One through Sixteen of this Indictment, the defendant, **MILAN PATEL**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said violations, including, but not limited to, the following:

(a) MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of Counts One through Sixteen of the Indictment.

122.   If, as a result of any act or omission of the defendant, any property subject to forfeiture:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without undue complexity or difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to

seek forfeiture of any other property of the defendant up to the value of the

forfeitable property described above.


A _____*True*_____ BILL

_____
FOREPERSON


RYAN K. BUCHANAN
*United States Attorney*


ALEX R. SISTLA
*Assistant United States Attorney*
Georgia Bar No. 845602


THOMAS J. KREPP
*Assistant United States Attorney*
Georgia Bar No. 346781


600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181